**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
JEFFERSON CITY DIVISION**

| | | |
|---|---|---|
| DAVID MOSER and RICHARD ADAMS, Individually and On Behalf of All Similarly Situated Persons, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:24-cv-4058-WJE |
| CLUB CAR WASH OPERATING, LLC and ROLAND S. BARTELS, | ) ) ) | |
| Defendants. | ) | JURY DEMANDED |

**UNOPPOSED MEMORANDUM IN SUPPORT OF
UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT**

## I. INTRODUCTION

Named Plaintiffs David Moser and Richard Adams (collectively, "Plaintiffs"), on behalf of themselves, opt in Plaintiff Patrick McClure, and all other similarly situated employees, and Club Car Wash Operating, LLC and Roland S. Bartels (collectively, "Defendants") (Plaintiffs and Defendants together are the "Parties") have reached a settlement agreement with respect to this Fair Labor Standards Act ("FLSA") case that, if approved, will benefit the members of the proposed FLSA collective that choose to accept it. The settlement agreement represents the culmination of months of investigation, litigation, and negotiation, and included a full-day mediation with Frank Neuner. If approved, it will provide meaningful relief to Plaintiffs and alleged similarly situated employees of Defendants.

Plaintiffs are two salaried maintenance technicians based out of Defendants' Central Texas location. Defendants employed Plaintiffs and those similarly situated to repair and maintain the equipment and premises at Defendants' car wash locations across the country. On April 17, 2024, Plaintiffs commenced the instant lawsuit against Defendants in this Court (the "Action") alleging

1

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. ECF Doc. 1. While Plaintiffs sought to pursue their FLSA claims as a collective action based on 29 U.S.C. § 216(b), no motions for collective certification have been filed to date.

Defendants employ or have employed approximately 52 full-time maintenance technicians over the past three years, and Defendants' records have been used to identify the eligible class members.

On June 14, 2024, Defendants filed their Answer to Plaintiffs' Complaint, denying Plaintiffs' material allegations including those related to their failure to properly pay Plaintiffs for all unpaid overtime worked. ECF Doc. 21. Defendants claimed that Plaintiffs were paid properly for all time they worked, and, in addition, Defendants raised a number of affirmative defenses.

## II.     THE SETTLEMENT PROCESS

On August 23, 2024, the Parties voluntarily mediated this case with mediator Frank Neuner. During the period leading up to that mediation, Defendants provided Plaintiffs with an anonymized class list, anonymized OnStar GPS records, a spreadsheet of Defendants' building address locations, relevant documents from Plaintiffs' personnel files, and the maintenance technician job position description, and engaged in preliminary settlement negotiations and discussions about the Parties' claims and defenses, which included Plaintiffs' counsel providing a pre-mediation settlement proposal that described their exposure analysis and the basis for the demand. Exhibit 2, Declaration of Josef Buenker, ¶¶5-7.

After careful review and analysis of the information and documents revealed through the informal exchange of pre-mediation discovery and the validity of the claims and defenses of the Parties, and after the mediation, the Parties reached an agreement to resolve the claims of Plaintiffs and the putative class. A copy of the executed Settlement Agreement is attached hereto as Exhibit 1. At all times, the negotiations leading to this settlement have been adversarial, non-collusive, and

2

at arm's length.

Plaintiffs and Defendants share an interest in fully and finally resolving the issues raised in this action. Because the Parties recognize the expense and difficulty of continuing to prosecute this action through trial and subsequent appeals, as well as the risk and uncertainty of the outcome inherent in any such litigation, the Parties have agreed to be bound by the settlement which they now ask this Court to approve. Importantly, the Parties have conditioned the Settlement Agreement upon the Court's approval of its terms, and absent that approval, the entire settlement shall be null and void.

## III.    THE COMPLEXITY AND UNCERTAINTY OF THE CLAIMS AND DEFENSES

Both sides acknowledged that the Parties' respective positions were substantially complicated and uncertain due to numerous factual and legal disputes. As an initial matter, Defendants claimed that their practices and policies compensated Plaintiffs for all alleged work activity. In addition, Defendants disputed whether Plaintiffs were entitled to overtime pay at all under the Fair Labor Standards Act and more importantly disputed the number of hours Plaintiffs claimed to have worked each week during the relevant period.

The settlement reached by the Parties was the product of arms-length negotiations by experienced counsel. The settlement will provide substantial relief to Plaintiffs and others similarly situated and will eliminate the risks both sides would bear if this litigation continued to resolution on the merits. Thus, the Parties believe the settlement is fair and reasonable and should be approved.

## IV.    THE TERMS OF THE SETTLEMENT

### A.    Payment To The Settlement Class

The Settlement Agreement provides for a Maximum Settlement Amount in the amount of $600,000.00 (Six Hundred Thousand Dollars and NO/100). Exhibit 1. Of that amount, no more than 33%, or $200,000.00, will be allocated to attorneys' fees; litigation costs are limited to

$4,858.00. In payment for their service to the Collective in obtaining the settlement and their participation in the case as the lead plaintiffs, Representative Service Awards in the amount of $6,000.00 to David Moser and $4,000.00 to Richard Adams, for a total of $10,000.00, will be made, and $7,913.13 will be allocated to the costs of settlement administration. Thus, under those terms, the "Net Settlement Amount" to be allocated to the Collective Members is $377,228.87. 35% of each Settlement Participant's Settlement Award will be allocated as W-2 income and subject to withholdings required by law; the remaining 65% will be allocated as non-W-2 income.

The settlement amounts have been proportionally allocated to each potential class member based upon their individual damage calculations, which is based on weeks worked during the relevant period. In addition to the settlement payments, Defendants will pay the employer's portion of any payroll taxes due. In return, Plaintiffs will release their wage and hour claims.

Collective Members will be given an opportunity to become Participating Collective Members if they file consents to opt in to the lawsuit within a period of sixty (60) days following the date the Settlement Administrator mails and emails the Notice Packet to Collective Members. To the extent that any Collective Member who opts in fails to claim his or her share of the Net Settlement Amount because he or she fails to cash the settlement check, those funds will be submitted in the Participating Collective Member's name by the Settlement Administrator to the lawfully authorized unclaimed property fund in the Participating Collective Member's state of residence as indicated on their mailing address.[1]

---

[1] Because only individuals who affirmatively elect to participate in this FLSA settlement and receive payment under the terms of the Settlement Agreement release any rights whatsoever, claims-made settlements of this kind, where the defendant retains any unclaimed funds, are both appropriate and routinely approved in FLSA cases. *See, e.g., House v. Jasper Prods. LLC*, 3:10-cv-00995-ODS (W.D. Mo. Oct. 18, 2011) (granting approval of FLSA settlement where, according to the settlement at Document 27-1, "any residue from the Settlement Fund after all payments are made under this Agreement because, for example, Collective Class Members either fail to opt-in to the settlement . . . will be retained by Defendant"); *White v. Systems & Svcs. Techs., Inc*., 5:10-cv-00715-DW (W.D. Mo. Nov. 23, 2011) (granting FLSA settlement where, according to settlement agreement at Document 38-1, "any portion of the Net Settlement Amount that is unclaimed by Collective Action Members . . . shall revert back to the Company"); *Johnson v. NCO Customer Mgmt. Inc*., 4:09-cv-1045 (W.D. Mo. Nov. 3, 2010) (granting FLSA settlement where "[t]hose Collective Class members who

**B.      Notice To The Class, Which Will Be Made By Direct Mail and by Email, Is The Best Notice Practicable To Reach Collective Members**

The Settlement Agreement provides for a detailed written notice (see Exhibit 1-A to the Settlement Agreement), mailed and emailed directly to all individuals who meet the class definition expressed in the Settlement Agreement – "all persons nationwide who are employed or were previously employed by Club as Maintenance Technicians at any time from April 17, 2021, until the date the Court approves the Settlement." *See* Exhibit 1, p. 2, ¶ 7. Based on the statutes of limitations governing Plaintiffs' claims in this matter, the Collective Period is defined as the date three years prior to the filing of the complaint, which is April 17, 2021, up to and including the date on which the Court approves the settlement.

Plaintiffs' claims under the Fair Labor Standards Act (FLSA) are limited by a maximum three-year statute of limitations. Defendants' records contain each employee's date of hire, date of termination (if applicable), and the respective job or jobs held during employment. Pursuant to the Settlement Agreement, Defendants will closely review their records to create the Collective List in an effort to ensure that it contains all current and former employees since April 17, 2021 who worked as a maintenance technician for Defendants. *See* Exhibit 1, p. 2, ¶4.

This settlement agreement is the compromise of disputed claims and does not constitute an admission by Defendants of any violation of any federal, state, or local statute or regulation; of any violation of any of Plaintiffs' rights; or of any duty owed by Defendants to Plaintiffs. Defendants expressly deny Plaintiffs' claims, dispute Plaintiffs' entitlement to recover any damages, and disagree with Plaintiffs as to, for example and without limitation, the number of hours Plaintiffs actually worked, whether Plaintiffs were exempt under one or more exemptions to the FLSA's overtime requirements, whether Defendants' alleged FLSA violations were made in

---

choose not to participate in this settlement will not be waiving any of their rights to pursue such claims on their own account. Any residual amount from the Settlement Fund not paid out to the eligible Collective Class members will revert back to the Defendant").

good faith and on reasonable grounds, and whether Defendants' alleged FLSA violations were willful. As such, there is a bona fide dispute between the Parties. *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1352-54 (11th Cir. 1982).

## V. CONDITIONAL CERTIFICATION IS PROPER

Section 7 of the FLSA requires employers to pay time-and-a-half for hours worked over 40 in a workweek. 29 U.S.C. § 207. A collective action under the FLSA to recover overtime compensation and liquidated damages may be maintained, "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a Rule 23 class action, a collective action under the FLSA is pursued on an opt-in basis, requiring employees to provide their consent in writing to join the action. 29 U.S.C. § 216(b); *Schmaltz v. O'Reilly Auto. Stores, Inc.*, No. 4:12-CV-1056-JAR, 2013 WL 943752, at *2 (E.D. Mo. March 11, 2013).

District courts within the Eighth Circuit conduct a two-step analysis to determine whether employees are "similarly situated" for purposes of a collective action. *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1016 (E.D. Mo. 2010). "The first step is the 'notice stage,' in which plaintiffs seek early conditional class certification and notify potential class members of the case." *Bilskey v. Bluff City Ice, Inc.*, No. 1:13-CV-62 SNLJ, 2014 WL 320568, at *1 (E.D. Mo. Jan. 29, 2014) (quoting *Littlefield*, 679 F. Supp. 2d at 1016). The plaintiffs' burden at this stage is not an onerous one; instead, "'[c]onditional certification at the notice stage requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" *Littlefield*, 679 F. Supp. 2d at 1016 (quoting S*chleipfer v. Mitek Corp.*, No. 1:06CV109 CDP, 2007 WL 2485007, at *3 (E.D. Mo. Aug. 29, 2007)). The Court does not reach the merits of the plaintiff's claims or determine whether class members are actually similarly situated at this stage of the litigation. *Id*. If the Court conditionally certifies the

6

class, the potential class members are given notice and an opportunity to opt-in. *Wilson v. PNK (River City), LLC*, No. 4:15CV00380 AGF, 2015 WL 5098716, at *2 (E.D. Mo. Aug. 31, 2015).

The second step is the "merits stage" and occurs when the defendant moves to decertify the class, typically after the close of discovery. *Bilskey*, 2014 WL 230568, at *2. "Applying a stricter standard, the court at the second step makes a factual determination on the similarly situated question." *Wilson*, 2015 WL 5098716, at *2.

Plaintiffs allege that the potential class members are similarly situated to Moser and Adams because they were subject to the same alleged payroll policy that allegedly violates the FLSA. These workers are salaried maintenance workers whom Moser and Adams allege were not paid overtime in violation of the FLSA. Accordingly, for purposes of the class settlement, the Parties stipulated to the following class:

> All persons nationwide who are employed or were previously employed by Club as Maintenance Technicians at any time from April 17, 2021, until the date the Court approves the Settlement.

The Settlement Agreement contains a proposed notice to the potential class members, providing a brief summary of what the case is about, why they are receiving money, and the effect of joining the lawsuit. *See* Exhibit 1-A, Notice. The Settlement Agreement also provides that the "consent form" to opt in to this case (Exhibit 1-B) needs to be timely returned to the settlement administrator by mail or email.

## VI.   SUMMARY OF KEY SETTLEMENT TERMS

### A.  Consideration and release of claims by Plaintiffs.

In return for the payment described in the settlement agreement, the Participating Collective Members will release all claims for unpaid wages including all wage claims that were brought in this lawsuit or that could have been brought in this lawsuit. Ex. 1, p. 4, ¶ 25.

Upon approval and when the Court order approving the Settlement and the Court's entry

7

of judgment become Final, Defendants will deliver to the administrator contact information for all potential settlement participants within 5 days. All individuals will have 60 days to opt into the settlement, except that individuals who are re-mailed a Notice of Settlement shall have 15 additional days to opt into the settlement. Within 20 days of the Final Response Deadline, Defendants will fund the administrator's settlement account. Within 10 days after funding, the administrator will send out payments. The funds payable to any individual who does not negotiate their check with 180 days of issuance will be deposited into the lawfully authorized unclaimed property fund in that person's last known state of residence. Ex. 1, p. 6-9.

Under the settlement, Plaintiffs will receive (net of attorney's fees and costs) virtually all of their alleged unpaid wages using Moser's and Adams's calculations, which allege hours that are much higher than Defendants claim. Plaintiffs' net recovery, after fees and costs, is $377,228.87. This amounts to paying each opt in approximately 11.6 hours of overtime per week for every week in which they worked during the relevant period, even for those weeks when they did not work full weeks.[2]

### B.    Service Award to Class Representatives[3]

---

[2] Typical salaries for Defendants' maintenance technicians were approximately $75,000 per year. $75,000 divided by 52 weeks comes to $1,442.30 per week, which, when divided by 51.6 hours and then divided by 2 produces an overtime rate of $13.98 per hour. This overtime rate, when multiplied by 11.6 hours of overtime comes to $162.12 per week. All class members are allocated $162.84 per week for every week worked during the relevant period.

[3] Courts routinely approve incentive awards to compensate class representatives for the services they provided and the risks they incurred during the course of the class action litigation. *See Caligiuri v. Symantec Corp.,* 855 F.3d 860, 868 (8th Cir. 2017) (awarding $10,000 each to named plaintiffs); *Wineland v. Casey's Gen. Stores, Inc., 267 F.R.D. 669, 677 (*S.D. Iowa 2009*)*(approving $10,000 incentive awards to each named Plaintiff); *McClean v. Health Sys., Inc.*, No. 6:ll-CV-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) (awarding incentive award of $5,000 to lead Plaintiffs). The amounts awarded reflect this substantial service and risk, and often are substantial. *See, e.g., See Sanders v. MPRI, Inc., et al.,* No. 5:08-cv-00345-R, United States District Court, Western District of Oklahoma, Dkt. Nos. 44- 4 and 44-5 (approving settlement in which named plaintiff received incentive award of $14,300 out of $500,484 to be disbursed to class of opt-in plaintiffs); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (approving incentive award of $10,000, which was "well within the range of reasonable incentive awards."); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D.

The terms of the settlement allow Moser and Adams to receive a total of $10,000 ($6,000 and $4,000) for service awards to be paid from the Maximum Settlement Amount for their role in serving as class representatives. Each of the two named Plaintiffs expended considerable time and effort and worked with Collective Counsel throughout this litigation in pursuing these claims on behalf of Collective Members, including but not limited to: (i) discussing with Collective Counsel various factual issues applicable to the legal issues in the case; and (ii) reviewing Defendants' responses to informal discovery and assisting with estimates of hours worked, and (iii) participating in the mediation with Frank Neuner remotely.

The two named Plaintiffs subjected themselves to the personal tolls of being directly involved in the litigation in order to assert their perceived rights and the rights of their fellow Collective Members. They took the initiative to file and pursue this matter on behalf of the Class. Therefore, the amounts sought for these incentive payments for the named Plaintiffs, specifically set forth in the Settlement Agreement, are fair and reasonable and should be approved by this Court.

### C. Plaintiffs' attorneys' fees and costs are fair and reasonable.

A portion of the Settlement is allocated to the payment of Plaintiffs' attorneys' fees and case expenses. It is entirely appropriate for the issue of attorneys' fees to be settled by the Parties themselves. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

The FLSA's fee-shifting provision "exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the FLSA." *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 952 (E.D.

---

366, 373-74 (S.D. Ohio 1990) (awarding incentive awards ranging from $35,000 to $50,000); *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D.Cal. 2007) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D.Cal. 1995) (approving payment of $50,000 to lead plaintiff).

Wis. 2003); *Pittman v. Sw. Bell Tel. L.P.*, No. SA-20-CA-01262-XR, 2022 U.S. Dist. LEXIS 244268, at *11 (W.D. Tex. 2022) (same). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourages the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1135(6th Cir. 1994).

Plaintiffs' attorneys' fees in this matter are calculated as a percentage-of-the-benefit or common fund, which "is appropriate as long as the fees are fair and reasonable." *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021); *see also Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018) (an appropriate method for determining an award of attorneys' fees is a percentage of the total value of benefits afforded to class members by the settlement. Awarding fees based on a percentage of the common fund "spread[s] litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). Customary contingency fees for class funds have ranged from 33.33% to 50%. *See In re Bayou Sorrell Class Action*, 2006 WL 323 (awarding, in a percentage/*Johnson* analysis, attorney fees of 36%). In FLSA cases such as this,[4] the "customary contingency" is within the range of 35 to 40%.[5] *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) as discussed in more detail below.

In reviewing the award, the Court may consider the following factors: (1) the amount involved and the results obtained; (2) whether the fee is fixed or contingent; (3) the novelty and difficulty of

---

[4] Other types of actions may involve concerns not present in an FLSA matter such as this. For example, Rule 23 class actions have unique procedural rules not applicable to an FLSA case, and notably bind nonparticipating class members, while an FLSA action requires an affirmative decision by putative class members to opt-in. Likewise, this case does not invoke the unique concerns involved in a maritime injury, where the court must be mindful of its role in protecting a ward of admiralty

[5] The Fifth Circuit notes this was the customary fee for cases "against the government," but Collective Counsel does not believe this distinction to be material.

the questions; (4) the experience, reputation, and ability of the attorneys; and (5) awards in similar cases. *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021) (citing *Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017)).

### 1. Factor 1: The amount involved and the results obtained.

A major advantage of the "percentage of recovery" method is that it considers the results that counsel actually obtained for the collective as opposed to the number of hours expended. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) ("the most critical factor in calculating a reasonable fee award is the degree of success obtained." (internal quotations omitted)).

The final settlement number of $600,000 is just below an overtime calculation based on a presumption that every Plaintiff and potential settlement participant worked 60 hours each and every week that they worked for the Defendant. Exhibit 2, Declaration of Josef Buenker, ¶8. Importantly, the settlement calculations, negotiations, and final settlement are/were all based on a three-year limitations period, that is, for the three-year period prior to the date that each individual Plaintiff joined the lawsuit. The final sum being offered or paid to each individual after attorneys' fees and costs and out-of-pocket administrative expenses is a proportionate reduction of the calculations resulting in the $600,000 settlement total. Each settlement participant will receive their proportionate share of the settlement funds, based on their tenure within a three-year limitations period as opposed to the FLSA's presumptive two-year period. Exhibit 2, ¶8.

Under the settlement, after fees and costs, collective members who worked even partial weeks in the three year-plus period of recovery were credited with approximately 11.6 hours of unpaid overtime for each week in which they performed any work. Exhibit 2, ¶7. Considering the risks of continued litigation, the results obtained for the collective in this case were exemplary. Defendants vigorously contested Plaintiffs' claims and denied that Plaintiffs were improperly paid, underpaid, or

that any alleged damages were owed at all. In spite of that, every maintenance technician that opts into this matter will receive approximately 11.6 hours of overtime for each week he or she worked during the relevant period. Exhibit 2, ¶7.

Finally, as noted above, for all opt in Collective Members who fail to timely cash their checks, their settlement amounts do not revert back to Defendants, but instead will be paid into the lawfully authorized unclaimed property fund in each Participating Collective Member's last known state of residence

Under Plaintiffs' theory of the case, Plaintiffs have prevailed in securing valuable compensation for their claims. They acquired a settlement that provides significant recovery for Plaintiffs and putative collective members. Meanwhile, under Defendants' theory, the putative collective members would be owed nothing.

In all, the Parties' settlement provides a substantial recovery to all putative collective members.

### 2. Factor 2: Contingent nature of fees.

Plaintiffs' counsel undertook this representation on a purely contingent basis. Plaintiffs' counsel thus took on the risk that accompanies contingent-fee representation that the investment of substantial attorney time and resources would be lost, including the prospect of dispositive motions or unfavorable outcomes late in discovery, or even at trial or on appeal. Plaintiffs' counsel thereby "cast their fate with the class members." *In re Iowa Ready-Mix Concrete Antitrust Litig., No. C* 10-4038-MWB, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011).

Plaintiffs' counsel should be compensated for the "high risk of loss" that this case would "produce no fee." *See, e.g., Brissette v. Heckler*, 784 F.2d 864, 866 (8th Cir. 1986). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v.*

*Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

Had this case not settled, Plaintiffs' counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendants could have succeeded. Therefore, Plaintiffs' counsel was at substantial risk for non-payment for all work performed. This factor thus favors approval of the requested fees.

### 3. Factor 3: Complexity of the litigation

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (internal citation omitted); *see also Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669, at *7 (E.D. Mo. June 25, 2021) ("The [FLSA] case appears to involve complex factual issues, and Plaintiffs' counsel has provided evidence that counsel engage in extensive investigation, legal research and analysis of difficult legal questions and theories…."); *Brown v. Reddy ICE Corp*., No. 4:14-cv-1786-RLW, 2016 WL 2930933, at *4 (E.D. Mo. May 19, 2016) ("[T]he instant case … involved undecided and complex questions of law and fact under the FLSA.").

Had the case not settled, the Parties faced complex motion practice, both over the merits, as well as on procedural matters, such as collective treatment. *McClean v. Health Sys., Inc.*, No. 6:11-cv-03037-DGK, 2015 WL 12426091, at *7 (W.D. Mo. June 1, 2015) (observing, in approving FLSA settlement, that "legal issues that still remain to be addressed at both the decertification and summary judgment stages are quite complex"). These factors weigh in favor of the approval of fees.

### 4. Factor 4: Experience, reputation, and ability of the attorneys.

Next, Plaintiffs' counsel's skill, knowledge, reputation, and experience are recognized in FLSA cases such as this. *See*, *e.g.*, *Tillis v. Global Fixture Svcs*; 4:19-cv-1059; US Dist. Ct, Southern District of Texas (101-member FLSA collective action that settled for $525,000);

*Thompson v. Rhombus Services, LLC*; 2:22-cv-1244; US District Court for the Eastern District of Pennsylvania (695-member FLSA collective action that settled for $1,180,000); *Rodwell v. Done Right Merchandising, Inc.*; 3:22-cv-358; US District Court for the Western District of North Carolina (229-member FLSA collective action that settled for a confidential amount) and *Golden v. Quality Life Services*, *LLC*, U.S. District Court for New Mexico, 2:22-cv-00579 (2024) (65-member $1.2 million FLSA and New Mexico Minimum Wage Act class and collective action settlement). Exhibit 2, ¶4; Exhibit 3, Declaration of Douglas B. Welmaker, ¶6-7.

FLSA collective action cases such as this are the sole focus of Plaintiffs' counsel's docket. Exhibit 2, ¶3; Exhibit 3, ¶ 5. Although both firms are based in Texas, The Buenker Law Firm and Welmaker Law, PLLC have a broad docket of FLSA cases, with litigation in multiple states, including Texas, Missouri, Pennsylvania, North Carolina, New Mexico, Colorado, Indiana, North Dakota, Nebraska, and elsewhere. Exhibit 2, ¶ 4; Exhibit 3, ¶7. In recent years, Plaintiffs' counsel's dockets have carried hundreds of cases involving class and collective wage and hour claims. *Id*.

Plaintiffs' counsel's experience has caused them to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this and maximizes the settlement value of the case. Plaintiffs' counsel's experience in this field has also resulted in a familiarity with the evidence and testimony necessary to the successful prosecution of cases such as this. In all, Plaintiffs' counsel has secured millions of dollars in settlements in FLSA cases for their clients. Further, Plaintiffs' counsel's acceptance of this case and the time that it has taken to work this case has precluded time that they could have spent pursuing other matters.

### 5. Factor 5: Awards in similar cases.

Plaintiffs' attorneys' fees in this case are well within precedent in the Eighth Circuit, and, in

fact, are on the low end of that range. *Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) ("[C]ourts [in the Eighth Circuit] have frequently awarded attorneys' fees ranging up to 36% in class actions."). In common fund cases such as this, including FLSA cases, district courts have approved fees ranging up to 40% of the collective's gross recovery. *See, e.g., Allshouse v. The Joshua Agency, LLC*, No. 1:21-CV-1032, 2023 WL 6166474, at *3 (W.D. Ark. Sept. 21, 2023) (40%); *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021) (35%); *King v. Raineri Const., LLC*, No. 4:14-CV-1828 (CEJ), 2015 WL 631253, at *4 (E.D. Mo. Feb. 12, 2015) (34%); *Salome v. Cushman & Wakefield U.S. Inc.*, No. 4:21-cv-01151-RWS, ECF No. 110, at *6 (E.D. Mo. Feb. 9, 2023) (approving attorneys' fees of 1/3 in wage-and-hour case); *Johnson v. Himagine Solutions, Inc*., No. 4:20-CV-00574-SPM, 2021 WL 2634669, at *7 (E.D. Mo. June 25, 2021) (same); *Tanner v. Empire Financing, Co*., No. 4:19-cv-0825-SEP, 2020 WL 7316115, at *2 (E.D. Mo. Dec. 11, 2020) (same); *Meller v. Bank of the West*, No. 3:18-cv-00033-JAJ-SBJ, 2018 WL 5305562, at *9 (S.D. Iowa Sept.10, 2018) (same), report and recommendation adopted, 2018 WL 5305556 (S.D. Iowa Oct. 1, 2018); *see also Browne v. P.A.M. Transport, Inc*., No. 5:16-cv-05366-TLB, ECF No. 300 (W.D. Ark. Jun. 31, 2020) (Brooks, J.) (awarding fees of 1/3 of $16.5m recovery (for a total fee award of $5.5m) in wage-and-hour class and collective action).

The fees here of 33% of the total settlement fund are thus well within a reasonable range and should be approved. Exhibit 3, ¶ 10.

### 6.     A lodestar cross-check confirms the fee award.

A contingency award may be examined by performing a lodestar cross-check of the fee award. *Keil v. Lopez*, 862 F.3d 685, 691 (8th Cir. 2017). However, the cross-check is "not required." *Id*.; *see also Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1157 (8th Cir. 1999) ("[U]se of the 'lodestar' approach is sometimes warranted to double-check the result of the 'percentage of the [benefit]' method."). This matter was resolved only after litigation was substantially underway, including the

exchange of pre-certification informal discovery and a full-day mediation. Still, Plaintiffs' counsel was able to efficiently resolve this case before additional discovery and depositions by working with Plaintiffs, defense counsel, and the mediator, including by exchanging multiple damage models and legal authorities, rather than prolonging the litigation and increasing the potential fees and costs. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011). As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th) § 14.121. Nonetheless, Plaintiffs' total lodestar fees are within a reasonable multiplier of the total fees sought. Ex. 2,

Federal courts in other districts outside of the high cost of living index regions of the Northeast and Pacific have recently recognized hourly rates in FLSA cases ranging up from $500 to $600 per hour for "top counsel." *Monroe v. FTS USA, LLC*, No. 208CV02100JTFCGC, 2020 WL 13227389, at *8 (W.D. Tenn. Oct. 13, 2020) (approving $500 to $600 for "Plaintiffs' top counsel" and observing that defendants' counsel charged $800 per hour for "several" attorneys and "$1,000 and $1,330 an hour for work done by four different attorneys"), aff'd, 17 F.4th 664 (6th Cir. 2021).

Courts in even smaller markets have awarded similar hourly rates. For example, as part of a wage-and-hour settlement in the Western District of Oklahoma, 14 years ago, attorneys admitted between 2006 and 2008 were awarded hourly rates ranging from $350 to $475. *Lewis v. The GEO Gp., Inc.*, No. 5:08-cv-00881-M, ECF No. 246 (W.D. Okla. Jun. 14, 2011). Adjusted for inflation, those awards would range from $478.23 to $649.02 today.

This amount is consistent with the rate normally charged by Mr. Welmaker and Mr. Buenker for hourly work, which is no less than $550 per hour regardless of the location where a matter is

pending (although both firms for Plaintiffs are based in Houston and Longview, respectively). Exhibit 2, ¶ 10 and Exhibit 3, ¶ 14. In all, hourly rates of $550 for Mr. Welmaker and Mr. Buenker are reasonable in this District for this case, if not below value, and an hourly rate of $450 for Anthony Meyer is also reasonable. Exhibit 4, Affidavit of Anthony Meyer, ¶¶3-5.

Given that Plaintiffs are seeking an award as a percentage of the common fund, Plaintiffs are not proposing to settle the issue of what hourly rate should be used for any particular attorneys or in any particular type of case. Plaintiffs present this information, rather, to demonstrate their proposed attorneys' fees for the purpose of evaluating the proposed attorneys' fees are well in line with a reasonable rate in for this purpose. Plaintiffs' counsel estimates that, to date, a total of at least 220 hours have been devoted by the attorneys working on this case. Exhibit 2, ¶ 12; Exhibit 3, ¶ 8; Exhibit 4, Meyer Declaration, ¶ 8. Under Plaintiffs' counsel's estimates, using the rates above, this equates to a total current lodestar of $119,290 to date (86.15 hours for Welmaker, 112.9 hours for Buenker, and 21.8 hours for Meyer).

Critically, even after approval, Plaintiffs' counsel's time in this matter will continue to increase. Plaintiffs' counsel will spend additional time fulfilling Plaintiffs' obligations under the settlement agreement, administering the settlement, and responding to Plaintiffs', Participating Collective Members', and putative collective members' inquiries.

These efforts may easily add 20 additional hours to this matter. Using the same hourly rates, at a reasonable estimate total hours of a minimum of 20 hours after administration, Plaintiffs' counsel's lodestar would be at $130,290.00. *E.g., Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) ("In determining a reasonable attorneys' fee award, courts are mindful of the fact that the lodestar multiplier will diminish when counsel is required to perform additional work in administering a finalized settlement.") (collecting cases).

In all, Plaintiffs' counsel's current lodestar has a 1.5 multiplier, which is already within the

range of reasonableness and will continue to decrease as this case moves to completion. *See Huyer v. Buckley*, 849 F.3d 395, 400 (8th Cir. 2017) (citing with approval *Nelson v. Wal-Mart Stores, Inc.*, No. 05-cv-000134, 2009 U.S. Dist. LEXIS 71253, 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009) (approving multiplier of 2.5 and citing cases within the Eighth Circuit approving multipliers of up to 5.6); *In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587, 589 (E.D. Pa. 2005) (6.96 multiplier); *In re RJR Nabisco*, 1992 WL 210138, at *5-6 (S.D.N.Y. Aug. 24, 1992) (6 multiplier); *Cosgrove v. Sullivan*, 759 F.Supp. 166, 167 n.1 (S.D.N.Y. 1991) (8.74 multiplier); *Boston & Maine Corn. v. Sheehan, Phinney, Bass & Green, P.A.,* 778 F.2d 890, 894 (1st Cir. 1985) (6 multiplier); *Roberts v. Texaco, Inc.*, 979 F.Supp. 185, 200 (S.D.N.Y. 1997) (5.5 multiplier); *In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (5.61 multiplier); *In re Aremissoft Corp. Sec. Litig.,* 210 F.R.D. 109, 134-35 (D.N.J. 2002) (4.3 multiplier ); *In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) (5.28 multiplier ), vacated and remanded, 243 F.3d 722 (3d Cir.2001), on remand, No. 98–2819 (D.N.J. June 11, 2002); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio Jan. 10, 2011) (5.3 multiplier).

### 7.  Plaintiffs' counsel is entitled to recover reasonable costs and expenses.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). "Section 216(b) of the FLSA has been interpreted to include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Toliver v. Jbs Plainwell,*

*Inc.*, No. 1:11-cv-302, 2015 WL 11255451, at *10 (W.D. Mich. Aug. 20, 2015) (internal quotation omitted), report and recommendation adopted as modified, No. 1:11-CV-302, 2016 WL 165031 (W.D. Mich. Jan. 14, 2016).

Plaintiff's counsel seeks reimbursement of the following litigation expenses and a reserve for anticipated expenses through approval, which are reasonable and necessary for prosecuting this case:

| | |
|---|---|
| Filing Fees: | $405.00 |
| Service of Process Fees: | $105.00 |
| Travel and Incidental Expenses: | $1,698.00 |
| Mediation Fees: | $2,450.00 |
| PHV Fees: | <u>$200.00</u> |
| Total: | $4,858.00[6] |

## VII.    STANDARDS FOR JUDICIAL APPROVAL OF AN FLSA SETTLEMENT

A circuit split exists within the Eighth Circuit as to whether the FLSA requires judicial approval to settle FLSA actions. *See Adams v. City of Kan. City*, No. 19-CV-00093-W-WBG, 2022 U.S. Dist. LEXIS 56394, at *6 (W.D. Mo. 2022) and *Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 U.S. Dist. LEXIS 86088, at *3 (E.D. Mo. 2021).  In situations where the parties have requested judicial approval, courts will assume approval is required and review the settlement accordingly.  *Adams v. City of Kan. City*, No. 19-CV-00093-W-WBG, 2022 U.S. Dist. LEXIS 56394, at *6.

When judicial approval of an FLSA settlement is required, courts must find the matter involves a bona fide wage and hour dispute, and the proposed settlement is fair and reasonable. *Adams v. City of Kan. City*, No. 19-CV-00093-W-WBG, 2022 U.S. Dist. LEXIS 56394, at *6-7 (W.D. Mo. 2022) (citing to *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354-

---

[6] Exhibit 2, ¶ 13.

55 (11th Cir. 1982) and *Krott v. New Directions Behav. Health, L.L.C.*, 4:19-CV-00915-DGK, 2022 U.S. Dist. LEXIS 6646, 2022 WL 130978, at *2 (W.D. Mo. Jan. 13, 2022) (citation omitted).

### A. The Proposed Settlement Is the Product of a Bona Fide Wage Dispute

In *Adams v. City of Kan. City*, No. 19-CV-00093-W-WBG, 2022 U.S. Dist. LEXIS 56394, at *7 (W.D. Mo. 2022), the court held that a bona fide wage dispute exists when an employee and an employer disagree "with respect to coverage or amount due under the [FLSA]." (citing to *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 703 (1945)). The proposed settlement in this case is the product of a bona fide wage dispute.

In their Complaint, Plaintiffs made factual allegations describing Defendants' allegedly unlawful compensation practices. More specifically, Plaintiffs alleged Defendants violated the FLSA because they failed to properly pay overtime compensation to salaried maintenance technicians for work that exceeded 40 hours per week.

In their Answer, Defendants denied Plaintiffs' material factual allegations and asserted an array of affirmative defenses. Defendants disputed (and continue to dispute) Plaintiffs' entitlement to recover any damages, and disagree with Plaintiffs as to, for example and without limitation, the number of hours Plaintiffs actually worked, whether Defendants' alleged FLSA violations were made in good faith and on reasonable grounds, and whether Defendants' alleged FLSA violations were willful.

The Parties conducted factual investigations regarding Plaintiffs' allegations, including the informal exchange of pre-mediation discovery, with Defendants producing documents and data related thereto. Exhibit 2, ¶¶5-7; Exhibit 3, Exhibit 2, ¶7. In addition to their factual investigations, the Parties also conducted in-depth legal analysis of various issues implicated in this case. *Id.* In particular, the Parties analyzed the nuances of the application and scope of

Defendants' defenses and the Parties' respective risks related to uncertainties thereto. *Id.* The Parties acknowledged other more specific respective risks related to various contested factual issues and the application of legal defenses.

The settlement of this lawsuit resulted only after: (i) review of documents regarding Defendants' compensation policies, employee GPS records, and employee payroll records; (ii) extensive legal analysis of the various nuances and applications of the FLSA by various federal courts as to Defendants' defenses; and (iii) good faith settlement negotiations between the Parties, including a full day mediation with Frank Neuner. *Id.*

Courts have routinely found that a bona fide dispute exists in situations where the parties have exchanged discovery and attended mediation. *See Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 U.S. Dist. LEXIS 86088, at \*5 (E.D. Mo. 2021); see also *Ezell v. Acosta, Inc.*, No. 4:16-CV-870 RLW, 2019 U.S. Dist. LEXIS 229283, 2019 WL 8160704, at \*2 (E.D. Mo. Apr. 4, 2019) (noting the parties exchanged discovery and engaged in mediation).

### 2. The Proposed Settlement Is Fair and Reasonable.

When determining whether an FLSA settlement is fair and reasonable, courts consider several factors, including but not limited to (1) the stage of litigation during which the settlement was reached; (2) the complexity, expense, and likely duration of the remaining litigation; (3) whether the settlement is the product of arm's length negotiations; and (4) whether the settlement's value outweighs the potential recovery if litigation continues. *Adams v. City of Kan. City*, No. 19-CV-00093-W-WBG, 2022 U.S. Dist. LEXIS 56394, at \*7-8 (W.D. Mo. 2022).

This suit has been pending for over seven months. ECF No. 1, Plaintiffs' Complaint, filed on April 17, 2024. As noted above, rather than engage in a drawn out, years-long litigation battle, the Parties voluntarily exchanged substantial information (compensation policies, employee GPS records, employee payroll records, and detailed damages analyses) and then

sought an early mediation. Should litigation have proceeded in a traditional manner, given the amount at stake and the size of the class, this case could have easily taken several years to conclude, a period of time that could have been extended even further should either Party have decided to invoke the appellate process. Ultimately, the Parties settled the case in a manner that will provide substantial monetary relief to all Participating Collective Members. Each Participating Collective Member who worked throughout the Collective Period receives a proportionate share of the settlement funds and qualifies for compensation for any week in which he or she performed any work.

This settlement was the product of arms-length negotiations by experienced counsel and has the salutary effect of (i) providing substantial relief to Plaintiffs and the class of employees they sought to represent, and (ii) eliminating inherent risks both sides would bear if this litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 U.S. Dist. LEXIS 86088, at *5-6 (E.D. Mo. 2021) ("The parties litigated this case for over a year and know the potential recovery and relative risks of proceeding to trial with their claims; yet the litigation is not so advanced that the parties will not realize significant benefits by settling before filing dispositive motions and proceeding to trial… [and] [t]he parties have been represented by experienced and competent counsel and the settlement reflects a compromise based on the merits of Plaintiffs' claims." *See also Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing Courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.,* 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class

settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

Public policy favors settlements. This is particularly true in complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *see also Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the scope of Defendants' defenses. If litigation had continued, Plaintiffs would have faced many obstacles, including a jury trial. As explained in detail above, even if Plaintiffs prevailed on liability issues, Plaintiffs faced considerable obstacles in proving both the nature and extent of Plaintiffs' damages.

As reflected in the Settlement Agreement, the proposed settlement brings substantial value to Plaintiffs. At trial, the potential recovery could have been less, or nothing at all. Consequently, this settlement brings Plaintiffs value now, as opposed to years from now, and provides certainty regarding the outcome of this matter. Under the circumstances, a significant factor weighing in favor of the Court's approval of the proposed settlement is that substantial benefits will be immediately received by Plaintiffs and made certain by the settlement. *See In re BankAmerica,* 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (internal quotations omitted).

This case involved multiple legal and factual disputes as to both liability and damages, most notably regarding legal arguments with respect to Plaintiffs' exemption classification and the number of hours Plaintiffs actually worked, and issues related to how Plaintiffs intended to prove the extent of such work. Many issues of fact and law would have to be resolved at trial, or before trial in scrupulously detailed briefing of dispositive motions. Trial, as well as the briefing of pretrial dispositive motions, would be lengthy, costly and complex. Regardless of the outcome at trial, post-judgment appeals could ensue. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed settlement.

After thorough investigations of the facts and law, the Parties have gained extensive knowledge of the strengths and weakness of their respective opponent's positions, providing the Parties with ample opportunity to assess the proposed settlement before they mutually agreed to it. Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the Parties submit the settlement is fair, reasonable and adequate. That opinion is entitled to great weight by the Court. Additionally, the Parties have executed a Settlement Agreement indicating their approval of the settlement. Accordingly, the Parties respectfully suggest this Court should conclude the settlement reflects a fair and reasonable resolution of a bona fide dispute under the FLSA and approve the settlement.

## VII. CONCLUSION

The Parties' Settlement Agreement is fair and reasonable in all respects and should be approved. Accordingly, the Parties request the Court issue an order: (1) approving the Settlement Agreement; (2) conditionally certifying the proposed settlement class under § 216 of the FLSA; (3) approving the Notice Packet; (4) ordering the Parties to comply with the terms of the Settlement Agreement; (5) ordering the Parties to file a stipulation of dismissal with prejudice after Defendants have made payment; and (6) retaining jurisdiction to enforce the Settlement

24

Agreement.

DATED December 17, 2024.

Respectfully Submitted,

**THE BUENKER LAW FIRM**

_/s/ Josef F.Buenker_
Josef F. Buenker
_Pro hac vice_
TBA No. 03316860
jbuenker@buenkerlaw.com
P.O. Box 10099
Houston, Texas 77206
713-868-3388 Telephone
713-683-9940 Facsimile

**WELMAKER LAW, PLLC**

/s/ Douglas B. Welmaker
Douglas B. Welmaker
_Pro Hac Vice_
Texas Bar No. 00788641
doug@welmakerlaw.com
409 N. Fredonia, Suite 118
Longview, Texas 75601
(512)799-2048

**LAW OFFICE OF**
**ANTHONY MEYER LLC**

_/s/ Anthony J. Meyer_
Anthony J. Meyer
MO Bar No. 71238
anthony@anthonymeyerlaw.com
103 Ripley Street
Columbia, Missouri 65201
573-860-0342 Telephone

_Attorneys for Plaintiffs_

## CERTIFICATE OF SERVICE

On December 17, 2024, I served this document on all parties via the Court's ECF system.

*/s/ Douglas B. Welmaker*
Douglas B. Welmaker

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Defendants in this matter and they have informed me that they are unopposed to this Motion.

*/s/ Douglas B. Welmaker*
Douglas B. Welmaker