Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### JEFFERSON CITY DIVISION

|  |  |  |
|---|---|---|
| David Moser & Richard Adams, individually and on behalf of all similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 2:24-cv-4058 |
| v. | ) ) ) | |
| Club Car Wash Operating, LLC & Roland S. Bartels, | ) ) ) | |
| Defendants. | ) ) | |

## FAIR LABOR STANDARDS ACT ("FLSA") COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

This FLSA Collective Action Settlement Agreement and Release ("Settlement" or "Settlement Agreement") is made and entered into by and between Plaintiffs David Moser and Richard Adams (collectively "Plaintiffs"), as individuals and on behalf of the Collective Members, on the one hand, and Defendants Club Car Wash Operating, LLC ("Club") and Roland S. Bartels ("Bartels") (together, "Defendants") (collectively with Plaintiffs, the "Parties") on the other hand.

### I.   DEFINITIONS

1.     "Action" means the civil action entitled *Moser, et al. v. Club Car Wash Operating, LLC, et al.* pending in the United States District Court, Western District of Missouri, Case No. 2:24-cv-4058.

2.     "Attorneys' Fees and Costs" means attorneys' fees approved by the Court for Collective Counsel's litigation and resolution of the Action, and all out-of-pocket costs incurred and to be incurred by Collective Counsel in the Action, including but not limited to expert fees and expenses, investigation expenses, costs associated with documenting the Settlement, providing any notices required as part of the Settlement or Court order, securing the Court's approval of the Settlement, administering the Settlement, and obtaining entry of a judgment approving the Settlement. Collective Counsel will request attorneys' fees not to exceed one-third (1/3) of the Maximum Settlement Amount, or Two Hundred Thousand Dollars ($200,000.00). The Attorneys' Fees and Costs will also mean and include the additional reimbursement of any costs and expenses associated with Collective Counsel's litigation and settlement of the Action, up to Four Thousand Eight Hundred Fifty-Eight Dollars and No/100 ($4,858.00), subject to the Court's approval.

3. "Collective Counsel" means Josef Buenker of The Buenker Law Firm, Douglas Welmaker of Welmaker Law PLLC, and Anthony Meyer of the Law Office of Anthony Meyer LLC.

4. "Collective List" means a complete list of all Collective Members that Club will diligently and in good faith compile from its electronic HR business records. The Collective List will include, to the extent available in Club's electronic HR business records, each Collective Member's: full name; number of workweeks worked as a Maintenance Technician from April 17, 2021, until the date the Court approves the Settlement; last known address; Social Security number; and whether a Consent to Join had been filed on behalf of the Collective Member in the Action on or before August 23, 2024.

5. "Collective Period" means the period from April 17, 2021, through the date the Court approves the Settlement.

6. "Collective Workweeks" means the cumulative total of all Participating Collective Members' Individual Workweeks.

7. "Collective" or "Collective Member(s)" means all persons nationwide who are employed or were previously employed by Club as Maintenance Technicians at any time from April 17, 2021, until the date the Court approves the Settlement.

8. "Complaint" means any complaint filed in the Action.

9. "Court" means the United States District Court for the Western District of Missouri.

10. "Defendants" means Club Car Wash Operating, LLC and Roland S. Bartels.

11. "Defense Counsel" means Joan B. Tucker Fife, Jason Campbell, and Caitlin McCann of Winston & Strawn LLP and Cathleen A. Martin of Newman, Comley & Ruth P.C.

12. "Effective Date" means the date on which the Court order approving the Settlement and the Court's entry of judgment become "Final."

13. "Final" means the latest of: (a) if no appeal of the approval/judgment is filed, 30 days after the Court enters an order granting approval of the Settlement and enters judgment, or (b) if any appeal of the approval/judgment is filed, the date on which the Court of Appeal or Supreme Court renders a final judgment affirming the approval/judgment or otherwise resolves any such appeal in a way that does not materially alter the terms of the Settlement.

14. "Final Response Deadline" means the deadline by which Collective Members who are re-mailed their Notice Packet must postmark or email to the Settlement Administrator valid, completed Consent to Join/Claim Forms. The Final Response Deadline will be fifteen (15) calendar days after the original sixty (60) calendar day Response Deadline.

15. "Final Settlement Amount" means the portion of the Maximum Settlement Amount sufficient to cover payment of Individual Settlement Payments to Participating

Collective Members and, to the extent awarded approved by the Court, Attorneys' Fees and Costs to Collective Counsel, the Plaintiffs' Representative Service Awards, and Settlement Administration Costs to the Settlement Administrator after the Settlement Administrator has determined the total amount due following the Response Deadline.

16.    "Individual Settlement Share" means each Collective Member's share of the Net Settlement Amount calculated in accordance with the calculations described in Paragraph 45 of this Settlement. Payment of an Individual Settlement Share to a Participating Collective Member shall be referred to as an "Individual Settlement Payment."

17.    "Individual Workweeks" means a Collective Member's total Workweeks during the Collective Period.

18.    "Maximum Settlement Amount" means the maximum total amount of up to Six Hundred Thousand Dollars and Zero Cents ($600,000.00), to be paid by Club in full satisfaction of all Released Claims. This Maximum Settlement Amount has been agreed to by Plaintiffs and Defendants based on the aggregation of the agreed-upon settlement value of the claims of Plaintiffs and Collective Members, plus Attorneys' Fees and Costs to Collective Counsel, Plaintiffs' Representative Service Awards, and Settlement Administration Costs to the Settlement Administrator. In no event will Club be required to pay more than the Maximum Settlement Amount (except that Club will be separately responsible for any employer payroll taxes required by law, including the employer FICA, FUTA, and SDI contributions, which shall not be paid from the Maximum Settlement Amount). Club will only be required to pay and deliver to the Settlement Administrator the portion of the Maximum Settlement Amount sufficient to cover payment of Individual Settlement Payments to Participating Collective Members, awarded Attorneys' Fees and Costs to Collective Counsel, Plaintiffs' Representative Service Awards, and Settlement Administration Costs to the Settlement Administrator after the Settlement Administrator has determined the total amount due following the Response Deadline.

19.    "Net Settlement Amount" means the portion of the Maximum Settlement Amount estimated to remain after deducting, to the extent approved by the Court, the Attorneys' Fees and Costs, Plaintiffs' Representative Service Awards, and Settlement Administration Costs. The portion of the Net Settlement Amount claimed by Participating Collective Members will be delivered to the Settlement Administrator, who will distribute it to Participating Class Members. Club will never be required to pay (or deliver to the Settlement Administrator) any portion of the Net Settlement Amount that is not claimed by Collective Members.

20.    "Notice Packet" means the Notice of Collective Action Settlement and Consent to Join/Claim Form, substantially in the forms attached as Exhibit A and Exhibit B respectively, that the Court approves and orders to be sent to all Collective Members who, as of the mailing date, are not Participating Collective Members, advising them of the terms of the Settlement, their rights under the Settlement Agreement, their estimated Individual Settlement Share amount, and instructions for completing and/or electronically accessing and/or submitting the Consent to Join/Claim Form.

21.    "Participating Collective Members" means (a) Plaintiffs and (b) all Collective Members (i) on whose behalf Collective Counsel filed a Consent to Join form in the Action on or

Doc ID: 60c641828e4ce415c6274d1d76ca015057687809

before August 23, 2024, or (ii) who submit a valid Consent to Join/Claim Form to the Settlement Administrator by the Response Deadline (or Final Response Deadline as applicable) consistent with the terms set forth in the Settlement Agreement.

22.     "Parties" means Plaintiffs and Defendants collectively.

23.     "Plaintiffs" means named plaintiffs David Moser and Richard Adams.

24.     "Qualified Settlement Account" means the account established by the Settlement Administrator, into which the Final Settlement Amount shall be deposited. In addition, and as an amount separate from the Final Settlement Amount, Club shall also transmit the employer-side taxes on the wage portion of the Individual Settlement Payments to the Settlement Administrator for deposit into the Qualified Settlement Account.

25.     "Released Claims" means any and all claims that were asserted in any Complaint in this Action and/or any and all claims, known or unknown, that could have been asserted in any Complaint in this Action based on any facts and/or allegations alleged in any Complaint in this Action, including all wage and hour related claims under the Fair Labor Standards Act or state or local law of regulating the payment of wages, including but not limited to any claim for unpaid minimum, straight time, on-call time, overtime, and/or double-time wages, or the calculation of those amounts, any claims related to the timing or provision of the payment of wages, and any related claims for penalties, interest, liquidated damages, treble damages, attorneys' fees, costs, and expenses.

26.     "Released Parties" means Club, Rapid Express Holdings, LLC, Midwest Car Wash Holdings, LLC, and each of the foregoing entities' current, former, or future successors, predecessors, members, owners, assigns, parent(s), subsidiary(s), affiliates, partnerships, or other related business entities; each of the forgoing entities' current, former, or future board members, officers, directors, executives, shareholders, trustees, partners, owners, managing and other agents, employees, representatives, attorneys, and insurers; and Bartels and Bartels' heirs, executors, administrators, and assigns.

27.     "Representative Service Awards" means the amount of additional consideration offered to Plaintiffs beyond Plaintiffs' Individual Settlement Payments under this Settlement Agreement in exchange for a general release of all claims, known or unknown, that they have or may have against the Released Parties, in the amount of $6,000.00 to David Moser and $4,000.00 to Richard Adams, for a total of $10,000.00 for both Representative Service Awards.

28.     "Response Deadline" means the deadline by which Collective Members must postmark or email to the Settlement Administrator valid, completed Consent to Join/Claim Forms. The Response Deadline will be sixty (60) calendar days from the initial mailing of the Notice Packet by the Settlement Administrator, unless the sixtieth (60th) calendar day falls on a Sunday or State holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.

29.     "Settlement" means the Parties' agreement to compromise the Action, the material terms of which are set forth in the Settlement Agreement.

Doc ID: 60c641828e4ce415c6274d1d76ca015057687809

30.     "Settlement Administration Costs" means the costs payable to the Settlement Administrator for administering this Settlement, including, but not limited to, printing, distributing, and tracking documents for this Settlement, tax reporting, distributing the Final Settlement Amount, and providing necessary reports and declarations, as requested by the Parties. The Settlement Administration Costs will be paid from the Final Settlement Amount.

31.     "Settlement Administrator" means the third-party settlement administrator to be agreed upon by Collective Counsel and Defense Counsel and approved by the Court for the purposes of administering this Settlement. Collective Counsel and Defense Counsel shall not have any known financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

32.     "Settlement Agreement" or "Agreement" means this FLSA Collective Action Settlement Agreement and Release.

33.     "Workweek Value" means the quotient resulting from dividing the Net Settlement Amount by the Collective Workweeks.

34.     "Workweeks" means all weeks during the Collective Period during which a Collective Member's pay records reflect a payment of wages for regular hours for work performed as a Maintenance Technician.

## II.     TERMS OF AGREEMENT

35.     Terms of Agreement Subject to Court Approval. All terms set forth in the Settlement Agreement are subject to Court approval. Plaintiffs shall apply to the Court for approval of the Settlement Agreement. If, for any reason, the Settlement is not approved, the Parties will work cooperatively to address any issues identified by the Court. The Parties further agree that the Settlement will not be admissible in this, or any other, legal process as evidence that (i) a collective or class should be certified, or (ii) Defendants are liable to Plaintiffs or any of the Collective Members.

36.     Funding of Final Settlement Amount. The Settlement is claims made. Club shall deposit into the Qualified Settlement Account only the Final Settlement Amount plus the amount for the employer-side taxes on the wage portion of the Individual Settlement Payments to Participating Collective Members.

37.     Settlement Administration Costs. The Settlement Administrator shall be paid for the costs of administering and distributing the Settlement. The estimate of the Settlement Administration Costs is $7,913.17. These costs shall be used to administer the Settlement, including, *inter alia*, preparing the required tax reporting on the Individual Settlement Payments, issuing 1099 and W-2 IRS Forms, distributing the Notice Packets, processing Consent to Join/Claim Forms, establishing a Qualified Settlement Account, calculating and paying Individual Settlement Payments, and providing necessary reports. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement. The Settlement Administration Costs will be paid from the Final Settlement Amount.

Doc ID: 60c641828e4ce415c6274d1d76ca015057687809

38.     Payment of Attorneys' Fees and Costs. Collective Counsel will seek Attorneys' Fees not to exceed one third (1/3) of the Maximum Settlement Amount and Costs not to exceed $3,160.00. The Attorneys' Fees and Costs shall be paid out of the Final Settlement Amount by the Settlement Administrator. Collective Counsel shall be solely and legally responsible to pay all applicable taxes on the payment made pursuant to this Paragraph. The Settlement Administrator will distribute the Attorney's Fees and Costs by bank wire to each of the Collective Counsel respectively as follows:  a) 45% of the fee approved to The Buenker Law Firm; 45% to Welmaker Law PLLC; and 10% to Law Office of Anthony Meyer LLC. All approved costs and expenses shall be wired to The Buenker Law Firm. The Attorneys' Fees and Costs approved by the Court are authorized to be wired by the Settlement Administrator to the respective Collective Counsel's financial institution(s) within three (3) days after the date on which Club deposits the Final Settlement Amount into the Qualified Settlement Account as set forth in Paragraphs 37 and 50.

39.     Notice Procedure. The Settlement Administrator shall be responsible for the following notice procedure:

a.      Delivery of the Collective List. Within five (5) calendar days of the Effective Date, Club shall provide the Collective List to the Settlement Administrator. The Settlement Administrator shall keep the Collective List confidential and shall not disclose it to anyone, except pursuant to Defendants' express written authorization.

b.      Notice by First-Class U.S. Mail. Within ten (10) calendar days of receiving the Collective List, the Settlement Administrator shall send the Notice Packet to all Collective Members via First Class U.S. Mail using the most current mailing addresses identified. The Settlement Administrator shall conduct reasonable verification measures, including checking the National Change of Address Database, relating to the mailing addresses before the mailing. A follow-up notice shall be mailed and emailed within thirty (30) days to Collective Members who have not returned a Consent to Join/Claim Form, by re-mailing and re-emailing the Notice of Collective Action Settlement and Consent to Join/Claim Form, substantially in the forms attached as Exhibit A and Exhibit B.

c.      Procedure for Lost and Undeliverable Notices. Any Notice Packet returned to the Settlement Administrator as non-deliverable on or before the Response Deadline shall be sent to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine a correct address using a skip-trace, or other search using the name, address and/or Social Security number of the Collective Member involved and shall re-mail the Notice Packet. If, after performing a skip-trace search, the Collective Member's Notice Packet is again returned to the Settlement Administrator as non-deliverable, the Settlement Administrator will have no further obligation to undertake efforts to obtain an alternative address. The Response Deadline for any Collective Member who is re-mailed a Notice of Settlement shall be extended fifteen (15) calendar days from the original Response Deadline (*i.e.*, the Final Response Deadline). The Settlement Administrator shall include a letter with the re-mailed Notice Packet advising the Collective Member of the Final Response Deadline.

40.     Disputed Information in Notice Packet. Each Participating Collective Member,

Doc ID: 60c641828e4ce415c6274d1d76ca015057687809

except those identified in Paragraph 21(a) and (b)(i), may dispute the Individual Workweeks attributed to him or her in the Notice Packet and must submit such a dispute to the Settlement Administrator on or before the Response Deadline. If a Collective Member disputes Individual Workweeks listed in the Notice Packet, the Collective Member may produce evidence to the Settlement Administrator demonstrating that such information is inaccurate. The Settlement Administrator shall notify Club of the dispute so that Club can attempt to review and resolve it. Absent documented evidence rebutting Club's records, Club's records will be determinative. The Settlement Administrator's determination of the number of each Collective Member's Individual Workweeks shall be final and not appealable or otherwise susceptible to challenge.

41.     Opt-In Procedure.  The Notice Packet shall give Collective Members instructions on how to "opt in" to the Action and Settlement and shall include a Consent to Join/Claim Form for that purpose. To receive his or her Individual Settlement Share, a Collective Member must complete and timely submit the Consent to Join/Claim Form by either mail or email to the Settlement Administrator in order to opt in to the Action and Settlement and the submitted Consent to Join/Claim Form must be filed with the Court by Collective Counsel. The Consent to Join/Claim Form sent to the Settlement Administrator must be postmarked, or email date and timestamped, no later than the Response Deadline (or Final Response Deadline as applicable). A Collective Member who properly and timely submits a Consent to Join/Claim Form becomes a Participating Collective Member and will receive his or her Individual Settlement Payment.

42.     The Settlement Terms Bind Only Participating Collective Members.  All Participating Collective Members shall be bound by all the terms of the Settlement Agreement, including those pertaining to the Released Claims as well as any judgment that may be entered by the Court after it grants approval of the Settlement.

43.     Certification Reports Regarding Settlement Administration.  The Settlement Administrator shall provide Collective Counsel and Defense Counsel a weekly report which certifies: (a) the number of Collective Members who have submitted a Consent to Join/Claim Form, including a statement as to whether the Consent to Join/Claim Form is valid or defective; (b) whether any Collective Member has submitted a challenge to any information contained in their Notice Packet; and (c) the number of returned, undeliverable and/or re-mailed Notice Packets. Additionally, the Settlement Administrator will provide to counsel for both Parties any updated reports regarding the administration of the Settlement Agreement as needed or requested.

44.     Individual Settlement Payment Calculations.  Individual Settlement Payments will be calculated and apportioned from the Net Settlement Amount based on each Collective Member's pro rata share of the Collective Workweeks. To determine each Collective Member's Individual Settlement Payment from the Net Settlement Amount, the Settlement Administrator will use the following formula: (1) calculate the Collective Workweeks; (2) multiply each Collective Member's Individual Workweeks by the Workweek Value. The Individual Settlement Payment will be reduced by any required deductions for each Participating Collective Member as specifically set forth herein, including employee-side tax withholdings or deductions.

45.     Tax Allocation of Individual Settlement Shares. The Individual Settlement Shares shall be allocated thirty-five percent (35%) as wages and sixty-five percent (65%) as penalties,

Doc ID: 60c641828e4ce415c6274d1d76ca015057687809

liquidated damages, and interest. The Individual Settlement Shares will be paid to Participating Collective Members subject to reduction for all applicable withholdings and taxes associated with the wage portion of the Individual Settlement Shares. The Settlement Administrator shall issue to Participating Collective Members a Form W-2 for amounts paid under this Settlement deemed wages, and a Form 1099 for the amounts allocated to penalties, liquidated damages, and interest.

46.     Payment of Settlement Amounts. The Settlement Administrator shall have the authority and obligation to make all payments, credits, and disbursements, calculated in accordance with the methodology set out in the Settlement Agreement and orders of the Court.

47.     Duties of the Settlement Administrator.  The Settlement Administrator's duties include, and are not limited to, providing a report to the Parties on a weekly basis regarding consents returned executed, letters returned based on bad addresses, emails that bounce back, and actions taken in regard to re-distributing returned letters and/or bad emails;  reporting payments under the Settlement to all required taxing and other authorities, taking and transmitting the appropriate employee's and employer's share of withholdings and taxes with respect to the wage-portion of the Individual Settlement Shares, issuing IRS Forms W-2 and 1099, and providing all submitted Consent to Join/Claim Forms to Collective Counsel and Defense Counsel. No person shall have any claim against Defendants, Defense Counsel, Plaintiffs, Collective Members, Collective Counsel, or the Settlement Administrator based on distributions and payments made in accordance with the Settlement Agreement.

48.     Settlement Administrator's Final Report(s).  Within five (5) calendar days after the Final Response Deadline, the Settlement Administrator shall inform Defendants of the Final Settlement Amount that must be funded based on the Collective Members who opted in to the Action and Settlement. The Settlement Administrator shall further provide Collective Counsel and Defense Counsel a report showing: (i) the number of Notice Packets mailed; (ii) the number of returned and undelivered Notice Packets; (iii) the number of re-mailed Notice Packets; (iv) the number of total undeliverable Notice Packets after re-mailing; (iv) the number of address traces performed for undeliverable Notice Packets after re-mailing; (v) the number of Notice Packets undeliverable from traced addresses; (vi) the final number of Collective Members who disputed their Individual Workweeks listed in the Notice Packet, including a statement as to whether the dispute was upheld or overruled; (vii) the final number and names of Collective Members who submitted timely and proper Consent to Join/Claim Forms; (viii) the total aggregate amount of Individual Settlement Shares claimed by Participating Collective Members; and (iv) the total amount of employer-side taxes on the wage portion of the Individual Settlement Shares claimed by Participating Collective Members. The Settlement Administrator's report shall include, as an exhibit, true and correct copies of all valid and timely Consents to Join/Claim Forms. Upon completion of administration of the Settlement, the Settlement Administrator shall provide written certification/declaration of such completion to counsel for all Parties and the Court, if requested by the Parties.

49.     Funding and Distribution Timing.  Club shall remit funds to the Qualified Settlement Account within fifteen (15) days after the Settlement Administrator informs Defendants of the total amount to be funded. Within ten (10) calendar days after Club deposits the Final Settlement Amount and the required employer-side taxes into the Qualified Settlement

Account, the Settlement Administrator shall distribute the Final Settlement Amount and associated tax payments.

50.     Non-Negotiated Settlement Checks.  Any checks issued by the Settlement Administrator to Participating Collective Members shall be negotiable for one hundred and eighty (180) calendar days. The funds which correspond with settlement checks that are not negotiated within one hundred and eighty (180) calendar days after issuance will be submitted in the Participating Collective Member's name by the Settlement Administrator to the lawfully authorized unclaimed property fund in the Participating Class Member's state of residence as indicated on their mailing address.

51.     Release of Claims by Plaintiffs. In exchange for the Representative Service Awards, each Plaintiff and each of their executors, representatives, administrators, agents, and assigns irrevocably and unconditionally fully and forever waive, release, and discharge the Released Parties from any and all claims, demands, actions, causes of actions, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown, that Plaintiffs may have or have ever had against the Released Parties, or any of them, by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter from the beginning of time up to and including the date each Plaintiff signs this Agreement.

52.     Release of Claims by Participating Collective Members.  Upon the date Club transfers the Final Settlement Amount to the Settlement Administrator, and except as to such rights or claims as may be created by the Settlement Agreement, each and every Participating Collective Member, on behalf of themselves and their heirs and assigns, shall release the Released Parties from the Released Claims.

53.     Judgment and Continued Jurisdiction. Upon approval of the Settlement by the Court, the Parties shall present a proposed judgment to the Court for its approval. After entry of the judgment, the Court shall have continuing jurisdiction solely for purposes of addressing: (a) the interpretation and enforcement of the terms of the Settlement, (b) Settlement administration matters including but not limited to the filing of submitted Consent to Join/Claim Forms, and (c) such post-judgment matters as may be appropriate under court rules or as set forth in this Agreement.

54.     No Solicitation of Appeals. The Parties agree to use their best efforts to carry out the terms of the Settlement Agreement. At no time shall the Parties or their counsel try to solicit Plaintiffs or Collective Members to appeal from the Court's final judgment.

55.     Nullification of Settlement Agreement. The Settlement Agreement shall be null and void and any order or judgment entered by the Court in furtherance of the Settlement shall be treated as void from the beginning if: (i) the Court does not approve the Settlement as provided herein; (ii) the Court does not enter a final judgment as provided herein; or (iii) the Settlement does not become final for any other reason. In such a case, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of the Settlement Agreement and the Parties shall proceed in all respects as if the Settlement Agreement had not been executed. In the event an appeal is filed from the Court's final

Doc ID: 60c641828e4ce415c6274d1d76ca015057687809

judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review (unless otherwise agreed to by the Parties).

### III.  DUTIES OF THE PARTIES PRIOR TO APPROVAL OF THIS SETTLEMENT AGREEMENT

56.  Promptly after execution of the Settlement Agreement, Plaintiffs shall move the Court for approval of the Settlement and obtain entry of an order accomplishing the following:

a.  Approving the Settlement of a bona fide dispute over FLSA provisions, adjudging the terms thereof to be fair, reasonable, and adequate, and directing that its terms and provisions be carried out;

b.  Approving as to form and content the proposed Notice Packet;

c.  Directing the mailing of the Notice Packet;

d.  Appointing Plaintiffs and Collective Counsel as representatives of the Collective Members;

e.  Approving Collective Counsel's application for the Attorneys' Fees and Costs;

f.  Approving settlement administration services to be provided by the Settlement Administrator and Settlement Administration Costs;

g.  Entering judgment; and

h.  Providing that the Court will retain jurisdiction to oversee administration and enforcement of the terms of the Settlement and the Court's orders.

57.  Plaintiffs shall submit the Settlement Agreement in support of Plaintiffs' motion for approval of the Settlement. Collective Counsel will send Defense Counsel the motion for approval of the Settlement for review, comments, and changes no less than five (5) court days prior to filing the motion. The Parties will meet and confer and agree upon the proposed order granting approval and the proposed final judgment.

### IV.  DUTIES OF THE PARTIES AFTER FINAL COURT APPROVAL

58.  Following entry of the Court's approval order and judgment, the Parties will each act to ensure its timely execution and the fulfillment of all its provisions, including but not limited to the following:

a.   Support the approval order and judgment on appeal, should an appeal be taken from the approval of the Settlement;

b.  Collective Counsel and Defense Counsel will reasonably assist the

Settlement Administrator as needed or requested in the process of identifying and locating Collective Members;

c. Collective Counsel will file all timely and valid Consents to Join with the Court; and

d. Collective Counsel will ensure that the Settlement Administrator will certify to the Court completion of all payments required to be made by the Settlement Agreement.

## V. OTHER PROVISIONS

59. No Admission. Nothing contained herein, nor the consummation of the Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants or any of the other Released Parties. The Parties have entered into the Settlement Agreement with the intention of avoiding further disputes and litigation with their attendant inconvenience and expenses. The Settlement Agreement is a settlement document and, pursuant to Federal Rule of Evidence 408 and/or any other similar law, shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve the Settlement, and/or interpret or enforce the Settlement.

60. Notices. Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

| To Plaintiff's Counsel: | To Defense Counsel: |
|---|---|
| THE BUENKER LAW FIRM<br>Josef Buenker<br>P.O. Box 10099<br>Houston, Texas 77206 | WINSTON & STRAWN LLP<br>Joan B. Tucker Fife<br>101 California Street, 35th Floor<br>San Francisco, California 94111 |
| WELMAKER LAW PLLC<br>Doug Welmaker<br>409 N. Fredonia St., Suite 118<br>Longview, Texas 75601 | WINSTON & STRAWN LLP<br>Jason S. Campbell<br>Caitlin W. McCann<br>333 S. Grand Ave., 38th Floor<br>Los Angeles, California 90071 |
| LAW OFFICE OF ANTHONY MEYER LLC<br>Anthony J. Meyer<br>103 Ripley Street<br>Columbia, MO 65201 | |

61. Tax Liability. The Parties make no representations as to the tax treatment or legal effect of the payments called for hereunder, and Participating Collective Members are not relying on any statement or representation by the Parties in this regard. Participating Collective Members

Doc ID: 60c641828e4ce415c6274d1d76ca015057687809

understand and agree that each will be solely responsible for the payment of any taxes on the payments which are issued to them, with the exception of the employer's share of the required payroll taxes and withholdings associated with the wage portion of the Individual Settlement Payments as described herein, and Plaintiffs and Participating Collective Members will defend, indemnify, and hold the Parties free and harmless from and against any claims resulting from treatment of the liquidated damages portion of the Individual Settlement Payments as non-taxable wages or damages.

62.     <u>Return of Defendants' Confidential Records</u>. Plaintiff and Collective Counsel agree to return or destroy all confidential documents produced by Defendants in the Action (whether produced in electronic or paper form). Should Collective Counsel elect to destroy those documents, they shall certify under penalty of perjury that such documents have been destroyed. To the extent any information is provided during the Settlement process concerning Collective Members, it shall be designated Confidential and shall not be used except as provided herein.

63.     <u>Confidentiality</u>.  Plaintiffs and Collective Counsel agree not to file a press release regarding the Settlement, respond to press/media inquiries regarding the Settlement (except to refer the person inquiring to the court file), or otherwise publicize the terms of this Settlement. This provision does not apply to Court filings or the notice of Settlement that shall be sent to Collective Members by the Settlement Administrator. The Parties will treat the Settlement as confidential except that: (i) the Parties may disclose the terms and provisions of this Settlement to the extent necessary to obtain Court approval; (ii) the Parties may inform their accountants, auditors, spouses tax consultants, and attorneys, and may disclose information as required to taxing authorities; and (iii) Defendants may disclose information related to this Settlement as necessary for the conduct of their business.

64.     <u>Exhibits and Headings</u>. The terms of this Agreement include the terms set forth in any attached exhibits, which are incorporated by this reference as though fully set forth herein. Any exhibits are an integral part of the Settlement. The descriptive headings of any paragraphs or sections of the Settlement Agreement are inserted for convenience of reference only and do not constitute a part of the Settlement Agreement.

65.     <u>Amendment or Modification</u>. Unless otherwise provided herein, the Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

66.     <u>Entire Agreement</u>. The Settlement Agreement, any supplemental written agreement subsequently incorporated, and any attached Exhibits constitute the entire Settlement Agreement among these Parties, and no oral or written representations, warranties, or inducements have been made to any Party concerning the Settlement Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

67.     <u>Authorization to Enter into Settlement Agreement</u>. The signatories hereto represent that they are fully authorized to enter into the Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

68. <u>Mutual Full Cooperation</u>. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement. Any disputes arising out of or relating to this Settlement Agreement will be submitted to mediator Frank Nuener for resolution. The Parties will split the costs of the mediator for any such time incurred by the mediator in reaching such resolution, and all Parties will bear their own attorneys' fees and other costs incurred.

69. <u>Binding on Successors and Assigns</u>. The Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, and successors. The Parties hereto represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

70. <u>Participating Collective Member Signatories</u>. It is agreed that because the Participating Collective Members are numerous, it is impossible or impractical to have each Participating Collective Member execute the Settlement Agreement. The Notice Packet will advise all Collective Members of the binding nature of the release and such shall have the same force and effect as if the Settlement Agreement were executed by each Participating Collective Member.

71. <u>Missouri Law Governs</u>. All terms of the Settlement Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the State of Missouri.

72. <u>Counterparts</u>. This Settlement Agreement shall become effective on the Effective Date. The Parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument. Any signature made and transmitted by facsimile for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall be binding upon the signing party.

73. <u>Agreement to Cooperate/Severability</u>. The Parties acknowledge that it is their intent to consummate this Settlement, and they agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement. The nonmaterial provisions of this Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its nonmaterial provisions shall not affect the validity or enforceability of any of the other provisions. Should the Court either require any section to be modified or rewritten, or any provision severed, except for material terms, the remainder shall be enforceable. In the event material terms of this Settlement Agreement are rejected by this Court or the Court deems the total settlement unfair or unreasonable or declines to approve it, the Parties will agree to cooperate and work together during a period of seven (7) days to determine if they can reach agreement on an amendment, and if so, will notify the Court of the amendment.

Doc ID: 60c641828e4ce415c6274d1d76ca015057687809

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement on the following days and year.

Dated: _____, 2024

_____
David Moser, on behalf of himself and Participating Collective Members

Dated: __10/13_____, 2024

*Rich Adams*

_____
Richard Adams, on behalf of himself and Participating Collective Members

Dated: _____, 2024

_____
Roland S. Bartels

CLUB CAR WASH OPERATING, LLC

Dated: _____, 2024

_____
By: Roland S. Bartels
Its: CEO

Doc ID: 60c641828e4ce415c6274d1d76ca015057687809

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement on the following days and year.


Dated: __13 Nov_____, 2024

David Moser, on behalf of himself and Participating Collective Members


Dated: _____, 2024

Richard Adams, on behalf of himself and Participating Collective Members


Dated: _____, 2024

Roland S. Bartels

CLUB CAR WASH OPERATING, LLC


Dated: _____, 2024

By: Roland S. Bartels
Its: CEO

Doc ID: 4d56fb3a6c2516b23dfec602bf3837df22331c10

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement on the following days and year.

Dated: _____, 2024

_____
David Moser, on behalf of himself and Participating
Collective Members


Dated: _____, 2024

_____
Richard Adams, on behalf of himself and
Participating Collective Members


Dated: __11 - 4__, 2024

_____
Roland S. Bartels

CLUB CAR WASH OPERATING, LLC

Dated: __11 - 4__, 2024

_____
By: Roland S. Bartels
Its: CEO

**EXHBIT A**

## NOTICE OF LAWSUIT AND SETTLEMENT OF WAGE CLAIMS FOR EMPLOYEES OF CLUB CAR WASH

### TIME-SENSITIVE, COURT-AUTHORIZED NOTICE
### * * * This is not an advertisement from a lawyer. * * *

### This Notice explains your legal rights and options regarding a settlement with Club Car Wash

| 1. | What is this about? |
|---|---|

A lawsuit was filed against Club Car Wash Operating, LLC ("Club Car Wash") and Roland S. Bartels for alleged unpaid overtime under a federal law, the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* The case is *Moser v. Club Car Wash Operating, LLC, et al.,* No. 2:24-cv-4058 (the "Action"), in the United States District Court for the Western District of Missouri.

The Action involves salaried Maintenance Technicians who were employed by Club Car Wash during the relevant period, April 17, 2021 through [APPROVAL DATE].

The Action was filed by David Moser and Richard Adams, former employees of Club Car Wash, who believe that they and other Maintenance Technicians were not paid overtime compensation for any hours worked over forty per workweek.

The Court has not determined that Club Car Wash or Bartels are liable or did anything wrong. Instead, the employees and Club Car Wash reached a settlement to resolve the case without further litigation. The Court overseeing the lawsuit has approved that settlement. As a result, Maintenance Technicians who worked for Club Car Wash during the relevant period may join the lawsuit and receive a payment in connection with the settlement.

| 2. | Why am I getting this notice? |
|---|---|

You have been identified from Club Car Wash records as a current or former employee who worked for Club Car Wash as a Maintenance Technician during the relevant period and who is eligible to recover money from the settlement. To be eligible to join the lawsuit and participate in this settlement:

You must have been employed by Club Car Wash as a Maintenance Technician during the relevant period, April 17, 2021 through [APPROVAL DATE].

In order to obtain money as part of the settlement, you must join the lawsuit by signing and returning the attached Consent to Join Form. If you do not join the lawsuit, you will not receive any money and you may not dispute your number of workweeks, if applicable.

| 3. | What is my share of the settlement |
|---|---|

Your settlement payment will be determined once the notice period closes and the total number of participating employees can be determined. All settlement participants will then receive a pro-rata share of the net settlement fund based on the number of weeks worked as a Maintenance Technician from April 17, 2021 through [APPROVAL DATE].

Club Car Wash records show you worked [##] workweeks* between April 17, 2021 and [APPROVAL DATE]. If you join the lawsuit by returning the attached Consent to Join Form, your portion of the settlement will be based on this number of weeks. If you believe the workweek information is wrong, you may contact the Settlement Administrator at [CONTACT INFORMATION] and dispute this number by producing evidence to the Settlement

*Moser v. Club Car Wash, Inc., et al.,* No. 2:24-cv-4058 (D. Mo.)   page 1 of 3

Administrator demonstrating that such information is inaccurate. The Settlement Administrator shall notify Club Car Wash of the dispute so that Club Car Wash can attempt to review and resolve it. Absent documented evidence rebutting Club Car Wash's records, Club Car Wash's records will be determinative. The Settlement Administrator's determination of the number of your workweeks shall be final and not appealable or otherwise susceptible to challenge.

*Workweeks means all weeks during the relevant period (April 17, 2021 through [APPROVAL DATE]) during which your records reflect a payment of wages for regular hours for work performed as a Maintenance Technician.

| **4.** | **How do I get the money offered?** | |
|---|---|---|
| **To join the lawsuit and settlement:**<br><br>**SIGN AND RETURN THE CONSENT TO JOIN FORM** | If you choose to join the Action and be included in the settlement, all you need to do is sign and return the attached Consent to Join Form. | **Deadline: DATE** |
| **To stay out of the lawsuit and settlement:**<br><br><br>**DO NOTHING** | If you do not want to join the Action and receive money as part of settlement, then you should <u>not</u> sign or return the attached Consent to Join Form. By doing nothing, you will retain your rights and not release any claims, but you give up the possibility of getting money from the settlement of the Action. | **No deadline.** |

| **5.** | **What happens if I sign and return the enclosed Consent to Join Form?** |
|---|---|

If you sign and return the Consent to Join Form, you agree to the following:

You will be acknowledging that you (i) are joining the Action, (ii) you are represented by the Buenker Law Firm, Welmaker Law PLLC, and The Law Office of Anthony Meyer LLC (together, the "Collective Attorneys"), (iii) you will be bound by the terms of the attorney-client agreements signed by David Moser and Richard Adams, and (iv) you will be bound by the terms of the Settlement Agreement signed by David Moser and Richard Adams. You will **not** have to pay the Collective Attorneys any money. Club Car Wash is paying attorneys' fees and costs as part of the settlement as a percentage of the overall Maximum Settlement Amount. In addition, the Court has approved a service award to David Moser and Richard Adams, the former employees who filed the Action, which will also be paid from the Maximum Settlement Amount.

By signing and returning the Consent to Join Form you will be opting-in to the Action and joining the settlement. You understand that by doing so, you are waiving and releasing the Released Parties any and all claims that were asserted in any Complaint in the Action and/or any and all claims, known or unknown, that could have been asserted in any Complaint in this Action based on any facts and/or allegations alleged in any Complaint in this Action, including all wage and hour related claims under the Fair Labor Standards Act or state or local law of regulating the payment of wages, including but not limited to any claim for unpaid minimum, straight time,, on-call time, overtime, and/or double-time wages, or the calculation of those amounts, any claims related to the timing or provision of the payment of wages, and any related claims for penalties, interest, liquidated damages, treble damages, attorneys' fees, costs, and expenses.

*Moser v. Club Car Wash, Inc., et al.*, No. 2:24-cv-4058 (D. Mo.)          page 2 of 3

## 6. What does the Court think?

While the Court approved this settlement, the Court did not determine that Club Car Wash (or anyone else) did anything wrong or is liable. The Court did not determine you are owed any money. Instead, this is a settlement payment reached as a compromise between the parties to avoid further litigation.

**Do not contact the Court regarding this settlement. The Court must remain neutral in this matter and cannot give you advice.**

## 7. What does Club Car Wash think?

Club Car Wash and Bartels do not agree they did anything wrong or that they are liable in this case. No adverse employment action will be taken against you because you choose to join or not join the Action and settlement.

## 8. How long do I have to make a decision?

**The deadline to join the lawsuit and settlement is 45 days after this notice was sent, which is [DATE].**

## 9. I still have questions. Where can I get more information?

This Notice is only a summary. If you would like, you can obtain certain documents related to the case. However, the deadline for signing and returning your Consent to Join Form will not be extended. Please contact the Settlement Administrator for any questions about the settlement:

**ILYM GROUP**
**2832 WALNUT AVE., SUITE C**
**TUSTIN, CA 92780**
**PHONE: (888) 250-6810**
**FAX: (888) 845-6185**

If you have any questions about the collective action or your legal rights, you should contact the Collective Counsel:

| | |
|---|---|
| Josef F. Buenker | Douglas B. Welmaker |
| THE BUENKER LAW FIRM | WELMAKER LAW PLLC |
| Phone 713-868-3388 | Phone 512-799-2048 |
| jbuenker@buenkerlaw.com | doug@welmakerlaw.com |

**EXHBIT B**

**CONSENT TO JOIN AND RELEASE FOR SETTLEMENT OF WAGE CLAIMS AGAINST CLUB CAR WASH**

<mark>NAME</mark>

1.  I have read the notice regarding the settlement of the overtime lawsuit filed against Club Car Wash Operating LLC and Roland S. Bartels (together, "Club Car Wash"). I understand that the lawsuit (the "Action") was brought under the Fair Labor Standards Act (FLSA). I understand the case was settled without any admission of liability by Club Car Wash, and the settlement was approved by the Court.

2.  I consent to join the lawsuit and participate in the settlement to recover damages for allegedly unpaid overtime and related damages. I understand I will receive an amount based on my proportional share of the Net Settlement Amount. I understand that, in exchange for this payment and by submitting this Consent to Join Form, I am releasing the Released Parties from any and all claims that were asserted in any Complaint in the Action and/or any and all claims, known or unknown, that could have been asserted in any Complaint in the Action based on any facts and/or allegations alleged in any Complaint in this Action, including all wage and hour related claims under the Fair Labor Standards Act or state or local law of regulating the payment of wages, including but not limited to any claim for unpaid minimum, straight time, on-call time, overtime, and/or double-time wages, or the calculation of those amounts, any claims related to the timing or provision of the payment of wages, and any related claims for penalties, interest, liquidated damages, treble damages, attorneys' fees, costs, and expenses.

3.  I consent to be bound by the Court's decisions.

4.  I designate the representative plaintiffs, David Moser and Richard Adams, as my agent to make decisions on my behalf regarding the lawsuit, including entering into settlement agreements, agreements with counsel, and all other matters related to the lawsuit.

5.  I understand and agree that my attorneys, the representative plaintiffs, or the Court may in the future appoint other individuals to be representative plaintiff(s). I consent to the appointment and agree to be bound by the decisions made by the representative plaintiff(s) regarding this matter.

_____        _____
Signature                                                                           Date

**By signing, you designate THE BUENKER LAW FIRM AND WELMAKER LAW PLLC as your Collective Counsel for the Action. The portion of this form above the bold line will be filed with the Court. The information below will not be filed on any public court filing.**

_____
Email Address

_____
Cell Phone Number

_____
Address

_____
City / State / Zip

| TO JOIN, RETURN THIS FORM BY MAIL OR EMAIL: |
|---|
| **Overtime Lawsuit Against Club Car Wash**<br>**ILYM GROUP**<br>**2832 WALNUT AVE., SUITE C**<br>**TUSTIN, CA 92780**<br>**PHONE: (888) 250-6810**<br>**FAX: (888) 845-6185** |

| QUESTIONS? You can contact Collective Counsel: | |
|---|---|
| Josef F. Buenker | Douglas B. Welmaker |
| THE BUENKER LAW FIRM | WELMAKER LAW PLLC |
| Phone 713-868-3388 | Phone 512-799-2048 |
| jbuenker@buenkerlaw.com | doug@welmakerlaw.com |

**The deadline to submit this form is <mark>DATE</mark>. Forms submitted after this date WILL NOT be valid.**